16-1297, Petitioner v. Federal Aviation Administration Butler v. Petitioner Epic, Taylor v. Petitioner John A. Taylor, Wright v. Respondent Petitioner v. Federal Aviation Administration Petitioner v. Petitioner Electronic Privacy Information Center Jeremy Scott I'd like to reserve two minutes for rebuttal. This case concerns the regulation of small unmanned aircraft systems, or drones, operating in the national airspace for non-recreational purposes. Now, these drone operations cannot occur without... Let me start early on by convincing that you're proper before the court. Sure, Your Honor. Do you understand the doctrine of standing? Yes, Your Honor. I understand you have to establish that there is a harm, particular to the plaintiff or petitioner, which is caused by the acts under litigation and is remediable in the proceeding before the court. Yes, Your Honor. What harm is there that is specific to Epic and under the representational theory and or under the representational theory to your members? Well, Your Honor, understand the standing assertions in this case that Epic brings are, as you point out, both representational and organizational. Now, I'll take the representational standing first. Epic has documented, with two affidavits from its members, that there will be drone operations authorized by this rule. And, again, drone operations cannot be conducted without this authorization that will implicate their privacy interests in a very specific way and specifically will... How is there a difference in the harm to the public at large? You understand that it has to be particular to the plaintiff. If you have only that harm that is general to the entire public, that's for political purposes. That's not a court-counseled version. Well, what we're talking about here, Your Honor, is not a generalized grievance. This is a specific effect on specific individuals who care about their privacy and do not want to be subjected to unwanted monitoring. How are they any different than any other individual as far as what's being done to them? Well, these individuals don't want to be subjected to unwanted monitoring in the same way that in Sierra Club versus FERC, the member of Sierra Club there wants to make use and enjoyment of a lake and is interrupted in doing so because of the direct effect of the regulations. It's not that they are making specific personal use of a lake, that the public in Pennsylvania are not making use of it. It's not a generalized, it's a specific harm. And we've alleged... Sorry, sorry. How is your member being invaded in any way different than all the other citizens of the United States? We've alleged local effects here in particular by keying into... Our members have alleged specific drone operations that are occurring in their local area. Now, there may be other drone operations happening across the country, but that doesn't turn this into a generalized grievance. As far as our members are concerned, the same operation can be going anywhere, right? There could be other drone operations. A regulatory scheme. Yes. And there's nothing that makes it differently applicable to your client, the members of your client organization, than to any other member of the public, is there? Well, each drone operation is going to be different, but our members are subject to an increased risk that they will be subject to monitoring. And even if other members of the public are also subject to the increased risk, that does not mean that we can't have a cognizable injury. In the same way that in Wild Earth Guardians, the plaintiffs there are not the only ones who are impacted by an increase in coal mining in the region around the land that's being used. So just because there is a mass sort of effect doesn't mean that individuals who allege specific local effects on themselves cannot have standing. But in addition to the injuries to EPIC's members, EPIC also suffers a unique and demonstrable injury to its own activities, in the same way that the petitioner in PETA versus USDA suffered an injury, because EPIC cannot bring complaints and other actions to the FAA for violations of privacy rights when there is no rule regulating privacy. In the same way that the USDA's refusals of promulgate Animal Welfare Act regulations that cover birds. So did the commission or charge of the FAA in this case concern privacy or did it concern safety? In this case, the FAA is required to regulate the operations of small drones, and in particular it's required to evaluate whether those operations pose a hazard to the public. In addition to... Pose a hazard. Pose a hazard to the public, which includes EPIC's members and includes members of the public that EPIC advocates on behalf of. Now this... I'm going back to the question of the statute. Did that charge, Congress' charge to the FAA, concern privacy or safety? It concerned hazards and safety, and the agency recognizes in their statutory analysis in the rule that hazards and safety are two different terms, and the agency is not addressing the hazards to privacy that these drone operations pose. Hazards to privacy is not a common phrase. Why should we assume that there is any mandate to the FAA to consider privacy at all? Well, there's a number of reasons why we should assume here that... A lot of these statutes will be enough as long as it comes from Congress. Sure. Maybe a number of reasons why you'd like it to concern privacy, depending on what Congress did. Sure. So what Congress did in addition to promulgating Section 333 and Section 332 of the Modernization Act, which required the FAA to develop a comprehensive plan and implement that comprehensive plan through regulation, Congress also followed up after the FAA submitted its comprehensive plan to Congress in November of 2013, identified privacy as one of the key issues that needed to be addressed as drones were integrated into the airspace. Congress passed the Consolidated Appropriations Act of 2014 two months later, ordered the FAA to study the impact that privacy would have on drones. This is on page 62 of the addendum. And for the FAA to recommend how the FAA itself could address these privacy impacts and to do so before the FAA conducted the regulation that Congress ordered in 2012. So Congress clearly knew that drone operations would pose a unique risk to individual privacy, and indeed the FAA is aware that drones pose this unique risk, as it notes in its own rule on PA 128. One second. The side of the page of the addendum where you said that Congress ordered consideration of privacy, which addendum are we talking about? In the amended addendum that EPIC submitted, the amended addendum on pages 62 and 63, we provide the text of the Consolidated Appropriations Act of 2014. I will apologize, Steve, but we're still getting your feedback. I think it does make it difficult to understand. I'm sorry if we have to ask you to repeat. I have several questions just about that. Yes. So I word-searched the Annual Appropriations Act. It does not include the word privacy. However, there is an explanatory statement provided by the staff, which contains material you're talking about. How much effect does an explanatory statement by staff, rather than something passed by the Congress, have in terms of requiring a consideration of privacy? Sure. First of all, am I right that that's what this is? I believe you're correct, Your Honor, that this was an explanatory statement by staff added during the process of promulgating the Appropriations Act. Our understanding is that this statement binds the FAA to produce this report. So EPIC actually separately initiated a FOIA proceedings with the FAA to try to find this report, which hasn't been produced yet. So in what way does a staff statement bind an agency? There's nothing in the Appropriations Act that adopts the staff statement as a law of the Congress. We believe it's an indication. I guess incumbent on our argument is not that it is. We're not arguing. He's using the word required. He's saying consideration of privacy is required. This was the evidence. I'm not sure about it. We were talking about the requirement of the report, but also the fact that this is evidence that Congress has recognized the risk to privacy. But the staff, not Congress, produced what you said there, right? Yes. Correct. It's in the Appropriations Act, but it was expired. Right. So it's not codified as part of the law, and it doesn't continue after the 2014 fiscal year, right? I believe that's correct, Your Honor. So we believe that this is evidence that the FAA not only should but can, not only can but should regulate the privacy considerations within the scope of the Modernization Act. I'm going to need something that says Congress thinks that. That you believe that it should is not material to us. Correct, Your Honor. Although, again, the FAA is very convinced about what you believe. We need to know what Congress thinks. Yes. Well, Congress delegated to the FAA the responsibility under Section 332 to come up with a comprehensive plan and implement that comprehensive plan. And when the FAA created the roadmap, when the FAA created the comprehensive plan, it identified a privacy as a key issue that was presented by the integration of drones. And then yet, now in this rulemaking, the FAA says it has nothing to do with privacy, and privacy is not an issue relevant to the integration of small drones into the airspace. Now, this is an inconsistent prior statement by the agency, where previously the agency has identified this as a priority, and now it's saying that it can't even consider it in the scope of the rulemaking.  I'm going to back you up to one more question on scanning. I'm sorry. I don't see an affidavit from EPIC about data scanning. You're familiar with our Sierra Club requirement that there be evidence presented, not just arguments and briefs. Correct, Your Honor. We provided evidence, in particular references to our organizational description on our website, but we would also be more than happy to supplement the record regarding EPIC's prior activities, because, again, as I mentioned, these types of complaints filed under federal privacy rules are exactly the type of activities that EPIC carries on a regular basis. You said repeatedly that an organization having an interest or a goal is not safe. I'm sorry, Your Honor. Could you repeat that? You said repeatedly that an organization having a purpose or goal or even prior activities is not safe. Correct. It's not sufficient that EPIC's mission, that organizational mission, be to promote privacy, right? We have to have specific activities that the agency's action interferes with, but here those specific activities are the submission of complaints under the privacy rule that doesn't exist, like in PETA the submission of complaints under the Animal Welfare Act rule that doesn't exist, and also the lack of information about these operations, which the FAA rule takes away from EPIC and the ability to educate the public about what's happening. So in EPIC's comments on the rule, when we proposed what we believe the agency should promulgate in terms of privacy regulations, one of the key regulations that EPIC identified and was also identified in the President's memorandum on drones was transparency. And, in fact, in the drone privacy test sites, the agency provided a requirement that the operators promulgate privacy policies, which EPIC would, again, review and be able to educate the public on the privacy practices of these drone operators. Well, in PETA, the question was finding out how many abuses of animals there were, et cetera. Yes. In this case, there are no privacy policies. I take it now you want to create the policies and then find out what they are. And also the FAA's investigations, like in PETA, the USDA's investigations of potential mistreatment of birds would generate information that PETA itself would use. Here, too, the FAA's investigation of the privacy rules would generate information that EPIC would use. We'd have to create the privacy rules in the first place. PETA was not suggesting that the Agriculture Department abuse animals and then we'll find out about it. In other words, there's another act. There's yet another act in the way here. Well, the act is the same. You have to create a requirement for the information. The act is the same in the sense that the agency's regulation would provide a venue for investigation of the mistreatment. And here, the agency's regulation would provide a venue for investigation of unlawful privacy practices by drone operators. Okay. Are we right, then, that in the end, the argument that the agency is required to consider privacy comes down to the word hazard in terms of the text of the statute? It comes down, yes, Your Honor. The word hazard in the text of the statute, which we provided a definition for, the agency has not provided a definition for the term hazard. You kept using the word required. Do you mean required or that they're permitted to consider privacy issues as a hazard? Well, the agency's required to determine whether the operations pose a hazard to the public. So that's a requirement. Now, whether these privacy issues are a hazard, the agency has not issued a reasoned decision on it. I don't know that you can say that Congress plainly intended to be talking about privacy when you said hazard. The phrase hazard to privacy is not something that springs to the ear every day. Sure. If this were ever on step one, we'd have a hard time saying that Congress plainly intended hazards to include matters of privacy, wouldn't we? I think that's right, Your Honor, although we believe that even if the term hazard is ambiguous— Well, that's right. You don't get anywhere with that argument, do you? We have to argue that it's an impermissible interpretation of the term hazard, which we have, based on the modernization act, the statements in the comprehensive plan, the roadmap. Do you have anywhere else in any statute that the word hazard, without any mention of privacy, has been construed to plainly include privacy? No, Your Honor. Do you have any case that has had construed the word hazard as involving privacy? No, Your Honor, but we do cite several cases— We believe they clearly erred by not being the first ever to use the word in the way you want to use it. No, Your Honor. We believe that they clearly erred because a hazard to the public, a risk to the public, was raised to the agency, and the agency said we will not consider this risk. So the agency's position is hazard means having something to a safety, right, not privacy. Well, Your Honor, I don't believe that's the agency's position, and if you look at the agency's statutory interpretation, which is on page 117 of the joint appendix in the rule, statutory findings, the agency there enumerates that the secretary must find that the operation of UAS will not create a hazard to users of the national air system or the public or pose a threat to national security, and then the secretary must also determine whether small UAS operations subject to this proposed rule pose a safety risk. So there, the terms safety and hazard are not being used as equivalent terms. They're being used as different terms. So the first question, Chevron 1 question, is, is it clear on the face, plain on the face, that the word hazard means privacy? And I'd say that the problem with that argument is that the word hazard appears in a paragraph in which the paragraph before specifically mentions safety and the same paragraph specifically mentions safety. So then we get to the question, is it permissible, even if it's ambiguous, is it permissible? And you're saying they're not explaining why they're not counting privacy as a hazard. If I look at JA 128 to 129, which is their explanation of why under the title privacy, their answer is that FAA's rulemaking authority is specifically tied to its critical safety mission. It did not require the consideration of privacy implications. That's what they said. They're interpreting the word hazard as safety. Am I wrong about that? I'm not asking whether they are right or not as a matter of policy or anything else, but isn't that their explanation that hazard means something to a safety? I think their explanation there, Your Honor, goes to their general authority as a safety agency, but it doesn't actually speak to the specific authority that's granted by the Modernization Act, both in 333- It's 332-A in the discussion. That's a long way from general when you look at the 128 and 129. Yes. The discussion at the bottom of it, they recollect two lines of 128. In the beginning of 129, you had to pick up the specific reference, 332-A, which is pretty specific in itself. I believe they're summarizing EPIC's reference to 332-A. They're EPIC's comments regarding the comprehensive plan. So the agency- They are. That's exactly right. Yes. So they're doing this specifically in response to your question. Correct, but their conclusion- They're talking about the general authority of the agency. They're talking about the specific response to the comments. I guess it was EPIC that made this comment. Right. So we're the ones who had highlighted the specific text of 332-A and the text in the conference. The thing earlier is that they had not given an actual response to this. You had pointed out before they had given a very specific response to that, hadn't they? My point was that their response is as to their general authority as an agency of regulating safety, not as to their specific obligations under Section 333 and 332. So at no point in this section analyze whether privacy is a hazard or explain why the privacy issues that EPIC has raised and that the agency recognizes are not hazards. So they don't analyze the hazard question at all. They don't provide a definition of hazard. They only talk about two limited hazards in the rule. They talk about the ability to sense, see, and avoid. And they talk about loss of positive control. And another issue I'll add is that EPIC flags the fact that the agency needed to promulgate specific cybersecurity standards because of the unique cybersecurity risks that drones pose. And here the agency in response, and this is played out in the briefs, essentially says that, well, because this is a line-of-sight operation, if a drone is subject to hacking, well, the individual will be able to see that it's been hacked. But, of course, that is no help at all in terms of the loss of positive control, which was one of the two issues that the agency itself keyed into. If the drone is hacked and the individual can see it, that doesn't give them positive control. They still lost positive control. So even under the two hazards that the agency does analyze, they don't fully address these privacy and cybersecurity issues. Thank you, Your Honor. Good morning, and may it please the Court. My name is John Taylor, and I'm a pro se petitioner in this matter. This rule doesn't govern only drones. This rule also governs model aircraft used for recreational purposes. But doesn't it have the same exemptions for model aircraft as the statute does? In some respects, that would be an accurate characterization. It parrots what's in the statute, but it takes it from being a prohibition on regulation into being an affirmative requirement for model aircraft hobbyists, which is not in the statute. What's the affirmative requirement that brings you to the Court? Well, Your Honor, if model aircraft hobbyists don't conform to Section 336, then they're required to fall under the requirements that are intended generally for commercial operators, Part 107, which includes having pilot certification. It's not a requirement, Your Honor. I think that's a key point here. If I use that word, then I... It's a statutory prohibition on FAA regulation. But the language of 336, the only verb phrase in there is that the FAA may not promulgate regulation. There's no requirement... I'm sorry, Your Honor. The feedback is having trouble hearing. Is that right? That's one of the arguments, Your Honor. All right. Well, let's take that one for the moment. What is it that they've done that went within the verboten territory of 336? They've brought toy aircraft... No, you're more specific than telling me that. Tell me what they require or what they forbid that violates the territory stated out in 336. It requires toy aircraft to have airworthiness certificates. Have what? Airworthiness certificates. What does it say there? What it does is it exempts Part 107 devices from having airworthiness certificates, but it doesn't exempt model aircraft from having them. As long as the model aircraft come within the standards laid out in 336, the regulation doesn't require anything of them, does it? It doesn't fall within the exception to the exception to the exception, so it does. Which provision governs? You're saying that there are model aircraft that are not covered by 336 exemptions, right? Right. And you're saying that this rule that we have before us today subjects those non-336 model aircraft regulations. Is that right? That's one argument. Okay, well, let's do this one more time. Yes. Since I was focusing on that one, it seems like a good one. What section of the rule affects those aircraft? All of Part 107 would govern model aircraft that don't fall within the 336 criteria, but actually within the 101.41 criteria. Now, doesn't 333, 332, and 333 authorize the agency to establish rules for unmanned aircraft systems? It's important to look at this, and I would say it does not, Your Honor. It doesn't? I would say it does not. Because I think it's important to look at this in the context of 2012 when this statute was enacted. Congress acts – Before we do that, I'm happy to look back at the context, but can we look at the text first? And it seems like the text authorizes the agency to – for operations and certification of civil unmanned aircraft systems. Best methods to enhance the technologies to achieve a safe and routine operation. And then the rule provides in B, rulemaking. Secretary shall publish a final rule on small unmanned aircraft systems that will allow for such systems in the national airspace. And then section 333, secretary of transportation shall determine if certain unmanned aircraft systems may operate safely. Secretary shall determine at a minimum which types do not create a hazard to users. Secretary determines that certain ones may operate safely. Secretary shall establish requirements. Why isn't that all an authorization to do whatever it is they did in 107? Which, by the way, is titled small unmanned aircraft systems, the same title as in the section of the statute giving the FAA authority. At the time the statute was enacted, the FAA considered civil unmanned aircraft systems to be only those that were used commercially. And that's set forth in great detail in the history of that in my brief. They considered recreational model aircraft to be non-aircraft. They drew a clear – One second. The statute 49 U.S.C. 4102 defines civil aircraft means an aircraft except a public aircraft, right? That's what – I'm reading you word for word from the statute. Yes, sir. A public aircraft is a government aircraft. So the statute, which is before us, says what a civil aircraft is. And there's only one thing it isn't. It's a government aircraft. So there's nothing – no reason to think that the word civil aircraft in modernization act is any different than the word civil aircraft in the original FAA act, is there? No, Your Honor. However, I think it's important to look, and the case law suggests, that Congress acts with an understanding of an agency's interpretations at that time. And I think when this statute was enacted, Congress was attempting to codify exactly what the FAA was doing at that time, and that was regulating commercial devices as civil aircraft. And then in 336, they were basically saying what the FAA was doing and saying, you know, model aircraft aren't that. We don't want you to regulate them unless they're endangering the public safety. And looking at the sections 331 through 333 – that's just the model aircraft that's specifically defined. I very well understand your argument that the government is wrong in light of our clear-cut opinion in claiming that their previous regulations apply to model aircraft. I get that, and by the way, I think you're right. But that's a separate question from whether the new statute allows new regulations for model aircraft or anything else that's not covered by it. We get into a definition of what constitutes – as Your Honor pointed out, the statute of what constitutes an aircraft, and it has always been considered to be something that was used to fly, and used to fly people. And if we're going to now change that and say, as the FAA does, that any device that flies, then it's a paper airplane. It's used to fly people, but the title of the statute is unmanned aircraft systems. So the statute could not possibly be thinking that its regulations will only apply to aircraft that fly people because it's entitled unmanned. Yes, Your Honor, I was referring to the definition of aircraft generally. I'm only referring to civil aircraft. Civil aircraft means an aircraft except the public aircraft, and then the new statute uses the word civil aircraft. Yes, Your Honor. Yes, Your Honor. Well, perhaps I should move on to another argument. Okay. Your Honor, the rule is unconstitutionally vague and is arbitrary and capricious. If an adult or even a little kid wants to play with a handheld flying toy with a range of 20 feet in the backyard, they have to determine if they're flying in accordance with a community-based set of safety guidelines within the programming of a nationwide community-based organization. Nobody knows what that means. Your argument is that the statute is unconstitutionally vague. No, Your Honor. The statute does not require that. The statute only allows the FAA to regulate within that space. But when they regulate within that space, they still have to avoid being arbitrary and capricious. That's one of the things that's a key problem. Is there a case that says, give me a case where the agency mirrored the statute, used exactly the words of the statute, and the court held the regulation unconstitutionally vague but did not hold the statute. Again, Your Honor, the statute does not place that requirement on model aircraft. This puts the definition of the exempted aircraft in a very specific term, much more specific than Congress usually is in regulatory areas. The regulation mirrors Congress's words. I don't see where you're coming from with that argument. Well, in incorporating that into a regulation and turning it from a prohibition on regulation to a de facto requirement, they need to make that not unconstitutional. But what's the difference between what you call a protection of regulation and a de facto requirement? Each of them is exempting from certain regulatory areas the same thing. Well, one of them is that the statute is regulating what the agency can do. And the agency is regulating what people can do. When they regulate what people can do, they have to do that in a way that people... You're talking about the restrictions that Congress puts on them. And you're objecting to them abiding by those restrictions, apparently. Well, Your Honor, as I point out, I would say these are two different sets of requirements. One is on the agency and one is on the people. When it's on the people, they need to come up with something that people can understand and comply with. And in the rulemaking, the ethic... Do you have any case where we have ever, or any other court has ever found an agency which mirrors the words of the statute to have made a regulation that's unconstitutionally vague? Your Honor, I would respectfully submit that that's a false premise because that's not what they're doing here. There's a difference in the words they use and the words Congress uses. Well, the words Congress used were relating to... Don't tell me what they do. Tell me the difference in the words. What's the difference in what they've laid out and the statutory... The words are the same, but they're used in two entirely different ways. Okay. And the FAA acknowledges in the process of the rulemaking that these... that people commented that these are not clear and they needed guidance. The FAA's response was to say, you know, that's a very good question, but we're not going to deal with that now. We're going to defer that to some future point. We're working on that. We've been working on it for a few years, and we know you don't know what you have to do to comply, but we'll tell you later. But for now, you have to do this. If you don't do it, you may go to jail.  What's going to put them in jail? What are the words that are going to put them in jail if they're doing something in the backyard with an aircraft that meets the statutory limits? It would be a violation of Part 107 or 101, and it's a violation... What part of 101 it is. Give me the words that they'd be violating that would put them in jail, Ken. I have the citation here, Your Honor, but it's... I don't think there's really any dispute. The violation of this regulation is an incarcerable offense. Only if there's some part of it that you violated. What part of it would you be violating in your backyard that's something to make a decision? Well, if you're not acting within the programming of a nationwide community-based organization and you don't have a pilot's license... Where's the pilot's license ever in the regulations applied for these model aircraft to come within EPA? I'm referring to the pilot's certification under Part 107. Read me the part that applies to this kind of aircraft. Model aircraft to meet the... Read me anything in any regulation that imposes a pilot's license. I don't have the exact language of it handy, Your Honor, but subpart C of Part 107 is remote pilot certification. So it's remote pilot certification. You have to go to the FAA. You have to take an exam. Are you saying that applies to the exempted aircraft? It applies to aircraft operators who can't figure out if they're exempted or not because they've created a rule that no one understands. So you're either operating within the programming of a nationwide whatever it is, which no one knows what that means, including the FAA, or you go get your pilot's certification. Little Billy has to go get his pilot's certification. And if you don't do that... You keep saying that throughout your brief, and you never tell me anywhere that the FAA is trying to make Little Billy get a license. And you can't tell me now. You tell me you don't have the exact words. You're not giving me any words that make Little Billy go get a license for his backyard toy. Read me the part of it that does that. Okay, thank you. So we've talked about two issues. One is the argument that non-336 aircraft are now subject to regulations as a consequence of 107. And one is the argument about vagueness of the statutory length. You also have an argument, I was having difficulty telling for sure, that model aircraft that do come within 336 are now regulated for more than just the safety requirement. Wait, wait, wait. So 107 says that it does not apply to any aircraft subject to the provisions of 101, right? And 101 is the 336 provision, right? It's the one with the 336 exception. So there's nothing in 107 that's going to govern aircraft that satisfy them. I'm going to call them the model requirements. So what is it that is a regulation of a model requirement aircraft that you don't like? I don't understand. I'm going to read you again. This is 107.1b. This part, and the part is 107, does not apply to the following two, any aircraft subject to the provisions of part 101 of this chapter. And the part is 107. And part 101 has a specific exemption for the ones that fit within the model requirements, right? And what part is the airworthiness section? What part does it come under? Also, within the statutory structures, 49UST44711A1. Okay, I got it. So airworthiness is one. You're saying that as a consequence of the rule that they just adopted, even planes that fit the model requirements of the statute still have to satisfy an airworthiness requirement. That's correct. They also, 101 devices and operations are exempt from the requirement that aircraft be repaired by an aircraft mechanic. May I interject? I am beginning to get lost in the woodshed. The 101.41, which you've been referring to, doesn't exempt any. The statute does in 336A. But 101.41, as I read it, doesn't exempt anything. It just says that the following rule applies to this sort of model aircraft, and the only rule that's mentioned in 101.4 is 101.43. So it's just telling us that the requirement that you can't operate an aircraft to endanger the safety of the national airspace system also applies to model unmanned aircraft. That's all it says. And 336A tells the FAA that it can't promulgate any rules dealing with model aircraft. I mean, there seems to be, and it's explained by the FAA in the brief, seems to be a contradiction because, you know, 336 says don't promulgate any rules, and 101, part sub E, promulgates the rules. But that's really, that's not, you know, I don't understand your argument about 107. 107, if you construe 107 to apply to model aircraft, then you're violating Section 336. That's why you don't construe it that way. And you use it as the FAA. Isn't that simple? That's a question for you. I understand, Your Honor, and I have to admit I'm not sure I followed the question. Are there further questions from the back? Thank you, Your Honor. Good morning. Abby Wright on behalf of the FAA and the Department of Transportation. I'm happy to start wherever you would like, but I thought I would start with EPIC Standing. So I wanted to first talk about the PETA case. Chief Judge Garland, I think you were correct, but in the PETA case there was an additional agency action that was blocking the plaintiffs there from exercising their regulatory right, which existed under the Animal Welfare Act regulations, to file complaints. So PETA was unable to obtain information that it needed to file complaints it already had the right to file. There's nothing comparable here. FAA has not done anything affirmative to block EPIC in any concrete tasks. All EPIC has alleged here are harm to its advocacy interests. This court in Turlock said very clearly that the expenditure of resources on advocacy is not a cognizable Article III injury. They simply have not shown anything concrete beyond that, and so they haven't shown they have an injury for organizational standing purposes. With respect to the representational standing purposes, I would direct the court to the declarations in the addendum. There the members say, I travel to a major metropolitan area. I understand that there are drone testing operations somewhere in that metropolitan area, and because of that I fear for my subjective, that my privacy interests will be violated. That's just a chain of attenuated possibilities. It's highly speculative. And, indeed, this court in the public citizen decision recognized that it is substantially more difficult to prove an injury in fact when we're talking about the actions of third parties. So EPIC is worried about what third parties are going to do. Their members have brought a kind of increased risk challenge. This court has set forth two requirements for demonstrating your standing. One is that the challenge agency action substantially increases your risk of harm, and, two, there is a substantial probability of harm. So they need to show that it is certainly impending that their privacy rights will be violated, and they have to connect that to the Part 107 rule, and I think the declarations, if Your Honors take a look at those, wholly fail to make that showing. I'd be happy to turn to the merits, assuming we get past the standing question. So I think it does, I think Your Honors were correct, that EPIC's argument comes down to the word hazard because it's clear that the Aviation Act does not, there's no requirement that FAA regulate privacy. FAA is given a number of safety objectives. It ensures that aircraft are airworthy. It protects people and property on the ground. It keeps airplanes from colliding with one another. It helps efficient use of airspace so we can all fly. Those are the FAA's safety missions. FAA has never been required by Congress to regulate privacy. The word hazard has to be understood in the context of Section 333. Indeed, FAA addresses what hazards it looks at with unmanned aircraft. There are two unique hazards. Of course, there's all the hazards that come with aircraft. What about the cybersecurity question? So FAA responded to that. Again, FAA is obviously not a cybersecurity agency. FAA said for the purposes of Section 333, which carves out a small class of small unmanned aircraft operations that can currently operate, it's enough to have a visual line of sight observer. So that's someone who always has to keep their eye on the drone. So the question they pose is, I don't know, imagine you're flying your drone near the White House. You can't do that, Your Honor. Well, that goes to Mr. Taylor's test. We can get back to that. Imagine you're flying your drone. Somebody is flying their drone near a church. And somebody who doesn't like the church takes over the drone by hacking into it. The fact that it was line of sight for the operator doesn't help the church. Well, the person who's visual line of sight can do a couple of things. Number one, they can call 911 immediately. But we're talking about the drone aimed directly at a person in the front yard of the church. By the time 911 gets there, that will be over. Well, FAA here is balancing safety risk and made the determination that it was enough that there be a visual line of sight observer who could immediately take action insofar as they can still control the drone or call for emergency help. So imagine you are the terrorist in line of sight with the drone. The terrorist would be the hacker or the terrorist would be? The terrorist hacks the drone. And it's too late for the line of sight person to get in the way. Well, that would obviously be an unfortunate safety incident, Your Honor. But the FAA is not arbitrary and capricious for not engaging in a kind of rulemaking for which it has no expertise, which is both cybersecurity and privacy. There may be other agencies that want to regulate the unmanned aircraft themselves to protect against hacking. Does your agency actually have authority to require a drone manufacturer to put cybersecurity? FTC might. I don't know, Your Honor. There may be other agencies as well. The Presidential Memorandum in 2015 directed the Department of Commerce's National Telecommunications and Information Administration to engage in interagency and stakeholder engagement processes to address privacy concerns. As FAA explained, that's the approach. FAA has participated fully in those, providing its safety and aeronautical and aviation expertise to those discussions. If no one else on the panel has questions about this part of the case, this is a Taylor case, right? Sure. First, do you regard anything that the agency did in the rulemaking that is challenged here as imposing any regulations on model aircraft that satisfy the statute's 336 requirements? No. No requirements of any kind? No. What Part 107 and Part 101 amendments do is carve out those operations that fall within the statute. There is a regulation that prohibits reckless operations, but that 336B expressly permits FAA to prevent reckless operation even of model aircraft. So the regulation you're not supporting that makes little bitty to give them the follow-up license in order to operate is the model airplane in the background. No. So if you follow that up. It doesn't even require them to have an airworthiness. So let me step back a little bit about what Part 107 is. So Part 107 is regulating anything that falls outside of the statutory requirements, which could include recreational operations that don't meet the standards. So I want to try to understand what you just said. The sentence says this part does not apply to any aircraft subject to the provisions of Part 101. Do you understand that to mean what 101.401 is carved out means it's not a subject? That's right. Do you get to that? Yes. It means that all the things that Part 107 requires don't apply to model aircraft. And your answer to my question was nothing there would require the operator of the model airplane to get a pilot license, right? That's correct. Yes or no? Yes. But what I want to be careful about, and I don't want to mislead the court, there is litigation held in advance in this court about what regulations might apply to model aircraft. That is being held in advance, and FAA is not enforcing that. Let's talk about this regulation. Yes, I'd refer you just to talk about Part 107, which is a challenge that's before this court. Firstly, the litigant is telling us that these regulations require the operator of the model aircraft in the backyard to get a pilot license, require an airworthiness certificate. Do you contend that these regulations require either of those? No. The Part 107 regulations do not require the model aircraft operator to do either of those things. But to be clear, in response to, I think, another argument that Mr. Taylor is making, the dividing line here isn't recreation or commercial. It is whether you meet the five operational limitations in Section 336. So I think one of his arguments is that FAA shouldn't have regulated, even when you fall outside of that, but you're doing it for hobby. I understand that, so that's going to be my second question. I just want to drill down one more moment here. They make an argument that the DC flight restriction regulation, 93.34, will apply somehow as a consequence of placing 101.41 within 101. That's incorrect. So there's nothing about placing it in Part 101 that changed that. Now, Mr. Taylor, in a previous suit, attempted to challenge an advisory circular that told model aircraft to comply with the flight restricted zone, and he was held to be time barred on that challenge. Whatever it is, it's not a consequence of the regulation in front of us. That's correct. Now moving to the second point, which is a model aircraft, or it's called recreational aircraft, that does not satisfy 336. There could be recreational aircraft that do not, yes. Of course, anything more than 56 pounds, for example, anything that doesn't fall within the requirements. That's right. Okay. That's correct. What parts of these rules apply to those? Every single part. Every single part. That's correct. And the authority for doing that is? It's Section 333. So? Which doesn't distinguish between recreation and commercial. Is the line of questions that I asked of the opposing counsel correct? Is that through our analysis? Yes. I mean, and FAA addressed comments on that and explained, which I think is self-evidently true, that there's nothing about the purpose of the flight that changes the safety risks. I could be a realtor flying a drone over a house for a pay. I could be flying it over my house to take pictures and post on the Internet. In either case. It was a consequence of 107. Now, does something about 107 make other regulations, existing regulations, that previously did not apply to recreational aircraft now applicable? Yes. I mean, it creates – are you saying 336 aircraft or non-336 aircraft? Non-336 aircraft. These were not pre-existing regulations. That's correct. So what about the – one of his arguments seems to be that regulations outside of 107, as a consequence of the placement, are now applicable to recreational aircraft. I think that argument is just with respect to model aircraft. I think he's saying that because Part 101.41 describes model aircraft, those are now subject to Part 91 requirements. In your view, the only requirements that apply to unmanned aircraft that don't meet 336 are those contained in 107. Is that right? That's right. This is a rule governing those operations. And to be clear, it's a subset of operations. So you have to meet – it has to be during the day. You have to have visual line-of-sight observer, all of those things. You make a lot of argument in your brief, and there are statements in the Federal Register that suggest you rely on the long-standing tradition of regulating recreational aircraft. I read Huerta saying, sorry, you can't do that. So the only way you get past me here is if everything depends on the Modernization Act and a new regulation. It does. So I want to be clear about what Taylor v. Huerta held, which was that the registry requirement violated as to Section 336 model aircraft. And so as far as non-336 recreational aircraft, I don't think Taylor v. Huerta has anything to say about that. I think it does. Would that affect the result in this case at all? You have a new regulation established by a new statute. Is that enough for what you have here? Or do you still have to rely on the old regulations? I think there's no – I don't think there's any way to read Taylor v. Huerta that is not tied to Section 336. I'm just countering my hypothetical. Then I'm in trouble. You need Huerta in a way you don't like. Do you lose the case? Or do you have another – do you have a basis in the statute? I mean, this court in Taylor v. Huerta said that the registry – you know, we made the argument that the registration requirement was preexisting and they said – I asked you all to disclose it. Sorry. I'm getting feedback too. I think it's making me want to talk faster. I'm getting feedback. It's very hard to me. Sorry. So in the registration case – I'm just asking this. Bear with me on my hypothetical. Yes. Okay. Is there any part of the regulations that are in front of us today that can't be sustained based only on the Modernization Act? That cannot be sustained? Yes. In other words, in the Federal Registry, you rely on two things. You rely on 332, 330, 330, 334 for the non-336 error. That's correct, John. And you also rely on your historical practice of interpreting the statute – the preexisting statute as allowing it. You rely on both. Yes, that's right. And you're brief. You rely on both. That's correct. Assume I don't let you rely on the second. That is, I don't agree with you that you ever regulated recreational aircraft before. Okay. I'm sorry. You're only entitled to do so now with a new regulation. Then I think, yes, we can rely solely on the Modernization Act, which created a class of unmanned aircraft, created a subclass of that, which is model aircraft, which is five operational limitations. Outside of that, directed the FAA to regulate in 332 and 333 unmanned aircraft systems. In 336 itself, it says, notwithstanding 333 and 332, there's this prohibition as to a very small class of 336 aircraft. So that is correct, Your Honor. You only need to look at the Modernization Act for authority for the Part 107 rule. Now, just to pick at the question of what WERTA means. Yes. So there are model aircraft that don't meet the standards of 336. Recreational, yes. Yes. And in WERTA, we rejected the argument that the registration rule is authorized by preexisting statutory provisions. And we said the FAA has never previously interpreted that registration requirement to apply to model aircraft. I read model aircraft as meaning small recreational aircraft, not ones that fit exactly into the five. But if you look at the basis on which the Court struck down, vacated that rule, it is 336A. 336A has five operational limitations. So the basis, the legal basis for our rule being invalidated was Section 336. It was not anything else. I mean, Judge Kavanaugh says statutory interpretation doesn't get any clearer. It burned in my brain. It does, but maybe you would regard this as dicta. But he says the FAA has never previously interpreted that registration requirement to apply to model aircraft. And that's the panel rejecting our argument. So our argument was it's not a, quote, new regulation. That was our argument. That's right. Yes. Your argument was you could rely on definition of aircraft, other parts of the FAA, and that you had done that in the past. The Court says, no, you didn't do that in the past. You can't rely on that. Yes. And that, I mean, it was accurate that FAA had never required model aircraft to register. That was true. It's also accurate that you never required model aircraft to have airworthiness certificates. You never required model aircraft to have pilots, et cetera. That's correct. And that's, I think, what will be at issue either if the litigation that's on hold is reinstated or if once FAA issues a final rule on model aircraft, I'm sure there will be petitions for review from that rule. And that will then be before this Court. This Court is Part 107 rule, so that's before this Court now. And it carves out Section 336 aircraft. Yes. The petition feeds this mixture tonight. All in our pattern. We don't have any time left, but we'll give you two more minutes. Thank you, Your Honor. Just a few quick points, Your Honor. First, on the point about the Appropriations Act and the explanatory statement, one additional issue I'd like to point out is that if you look on page 60 of the addendum, it actually states that Section 4 of the Act, the Appropriations Act, specifies that this explanatory statement shall have the same effect with respect to the allocation of funds and implementation of this legislation as if it were a joint explanatory statement of a committee of conference. Okay. That's the same as a joint explanatory statement of conference. Of a committee of conference. And what authority does that have? Well, it's more than a mere staff statement, Your Honor. What's the page of that one? Addendum 60, at the bottom left of the first column. Can you repeat what it is that your point is about that? Sure. I don't want to be difficult, but, again, I'm having difficulty hearing this. Yes, Your Honor. The point with the Congressional Budget Act is that the agency's defense to not considering privacy within the scope of the rule is that it's never considered privacy before, and that there was no clear mandate from Congress in the Modernization Act, and so it would be an unreasonable expansion. If you look at the agency's statement with regard to not considering privacy in the rule, the agency says on Joint Appendix 129, reading such a mandate into the law, the Modernization Act, would be a significant expansion. So our point here is that when Congress, in an explanatory statement, not only asked the agency to look into the privacy issue, but to come up with a plan for the FAA to address it, that's a strong indication that it would not be a significant expansion. So there's a question here, and just to quickly point on the arbitrary and capriciousness issue, the question here is not only if the FAA was specifically mandated to address privacy by Congress in the Modernization Act, but whether the FAA has within its authority under the Modernization Act the ability to address privacy and cybersecurity issues that Epic raised. The agency's point is that it would be an unreasonable expansion to do so, and we've provided statements from the agency itself and from Congress that show that it wouldn't be an unreasonable expansion to do so. And just also another quick point, Your Honor, I mentioned at the outset, we've also raised the point that the agency has unlawfully withheld the comprehensive rulemaking that's required under Section 332 and was to be... I have a petition for review. My petition for review doesn't raise a failure to act. Your Honor, in the petition for review, we enumerate unlawfully withholding of privacy regulations, and we're specifically in the petition for review seeking review of this rule, but it is within this court's jurisdiction under the statutory provision under 46110 and under the principles of TRAC v. FCC to regulate the withholding of action that the agency is obligated by statute to do. Are there no further questions, Your Honor? I will say that somewhere in the middle of your remarks, I quit getting feedback. Somebody fixed something, I guess. Okay. Justin, time for Mr. Taylor. Thank you, Your Honor. The court had asked me to read the portion of the regulation that required a pilot certification, and while I was sitting there, I found it. It's Part 107.12, requirement for a remote pilot certificate with a small UAS rating. Except as provided in Paragraph C of the section, no person may manipulate the flight controls of a small unmanned aircraft system unless that person has a remote pilot certificate with a small UAS rating, issue person with the subpart C of this part, and satisfies the requirements of 107.65. So little Billy does have to use that. Does that apply to aircrafts that are within the statutory exemptions, qualified for the statutory exemptions? It does not, Your Honor. Okay. If it doesn't, then that still doesn't answer the question that I'm asking. Well, but little Billy still – It's not going to affect little Billy if he's operating – I mean, if little Billy's covered, he's operating a drone, but if he's operating a less than 65-pound, et cetera, device, it's not going to apply. No, Your Honor. But then little Billy has to figure out if he's acting within programming of a nationwide community-based organization, which the FAA has not explained what that means. And they told us they're going to tell us sometime down the road. I think they gave some examples. Doesn't the Federal Register of Notice give some examples? I'm sorry, Your Honor? Doesn't the Federal Register of Notice give an example of a community-wide organization? It may, Your Honor. It may give an example of one, but it certainly doesn't define one. And one of the phrases that's cleaving everybody up in the air is, what does within the programming mean? No one knows what that means. The FAA doesn't know what that means. We can't figure it out. So people can't figure out how to conform to this. And if they can't do this, to play with a toy in their backyard, then they've got to go out and get the remote pilot certification, which is a very involved process and very complex task, as I understand it. Counselor, are you saying there is no community-based set of safety guidelines? We don't know what a community-based set of safety guidelines is, no, Your Honor. And within the programming is a key phrase that is just impossible for anyone to figure out what that means. And there's also, I'd like to address the other issue of the five-mile. Are there any organizations, drone flyers, organizations that promulgate the safety regulations? There are any number of them, Your Honor. Well, why wouldn't they? They may, but the FAA has not given us a definition of what a community-based set of safety guidelines is. And the second prong of this, which is mandatory, is within the programming of a nationwide community-based organization. I'd like to address, if I may, the five-mile airport notice. Isn't this discussed in the notice of interpretation of the special rule, which they did issue its own interim, but they did issue it? I'm sorry, Your Honor. Isn't the point, for example, there's a footnote. Community-based organizations, for example, would include groups such as the Academy of Model Aeronautics. Did I get that wrong? There's an interpretation of the special rule for model aircraft that was announced on June 25, 2014, right? Yes, Your Honor. And that is a discussion of some of the issues that you're talking about, right? Yes, Your Honor. And I'm vaguely familiar with that, but I don't know the exact language of that interpretation. But that's not within the regulation. And then you're still left with a question of within the programming. I'm sorry. It's an interpretation of the special rule for model aircraft. It's an interpretive rule. Yes, Your Honor. But we still don't know what within the programming is. And secondly, the five-mile airport notice. You asked for rebuttal. Did the government say anything about the five-mile limitation?  You're asking now for rebuttal. I think this is the reference to what you challenged in Huerta that the court said was untimely. Actually, no, Your Honor. The issue here is that to fly in your own backyard, if you're within five miles of an airport, you're required to not only notify the airport operator, but the tower of the airport. And the FAA has acknowledged that that makes no sense. It's actually a burden on the airport. And they didn't require it in Part 107, but they require it of hobbyists. And they say, yeah, this really doesn't make a lot of sense. And people have commented on the burden of this, but we're going to defer reasoned analysis of that to some future date. So they're requiring this of people while they've acknowledged that it's actually a burden on safety by burdening the airports and burdening the operators. That's what the statute is. The statute does not, with all due respect, Your Honor, the statute does not require that of operators. The statute is only a prohibition on FAA regulations. It allows them to regulate within that space, but it doesn't require it of hobbyists. If you want to be exempt from FAA regulations, then you notify the tower. According to the statute, that's not anything to do with the regulation. It's by statute. Your Honor, with all due respect, Section 336 does not require that. There's no language in there that would require that. The only verb phrase in there is that the FAA may not regulate. And what they're saying is they're giving the FAA a space which to regulate. If you want to regulate within this, if you want to regulate people who don't notify airports, you can do that, but it doesn't excuse them. It doesn't excuse them. You don't have a very good form there, do you? Your Honor, it doesn't excuse them from the requirement of not being arbitrary and capricious, of applying reasoned analysis. I have a congressional standard. If we ever held an agency to be arbitrary and capricious, we're applying a congressional standard. It's not, with all due respect, it's not applying a congressional standard. So you can't answer my question, then? Your Honor, with all due respect, it's not applicable to this question. Well, now, again, assume that I would like to know the answer, and therefore it is applicable. Do you know of any case we've ever held an agency arbitrary and capricious for applying a congressionally mandated standard? No, Your Honor. I'm sure they wouldn't. Okay. Thank you. Thank you, Your Honor. All right, we'll take the matter under submission. Thank the parties, and thank AU for their hospitality.
judges: Garland, Sentelle, Randolph